**G. A. C. HALFF FOUNDATION, a charitable corporation, et al., Appellants,**

**v.**

**Robert S. CALVERT, Comptroller of Public Accounts of the State of Texas, et al., Appellees.**

No. 12819.

Court of Civil Appeals of Texas.

San Antonio.

June 15, 1955.

Rehearing Denied July 13, 1955.

Denman, Franklin & Denman, San Antonio, Robertson, Jackson, Payne, Lancaster & Walker, Dallas, for appellants.

John B. Shepperd, W. V. Geppert, Marietta McGregor Payne, Austin, for appellees.

NORVELL, Justice.

This is an inheritance tax case, Article 7117 et seq., Vernon's Ann.Tex.Stats. On October 30, 1947, Godcheaux A. C. Halff amended Clause No. XI of his original will so as to provide that one-half of three-eighths of the residue of his estate should be distributed to a charitable corporation, association or trust fund, to be selected by the trustees named in the will. After the death of the testator in September of 1950, the G. A. C. Halff Foundation was formed by the surviving testamentary trustee, and the use of the foundation's property and resources was limited to charitable purposes within the State of Texas by the terms of its corporate charter. One-half of three-eighths of the residue of the estate has been appointed to the use of this foundation by the testamentary trustee. The trial court, sitting without a jury, held that this bequest did "not come within any exemption or exclusion provided in Article 7117 or Article 7122 of the Revised Civil Statutes of Texas and (was) subject to the State inheritance tax at the rates provided in Article 7122, * * *."[1] The recited basis of this holding is that the testamentary provision amending the will "vests one-half ($\frac{1}{2}$) of the three-eighths ($\frac{3}{8}$) of the residue of the Estate in * * * Hugh A. L. Halff, as Trustee, to select a charitable corporation, association or trust fund to be the beneficiary of the charitable trust provided for therein; that said * * * provision *does not constitute a power of appointment* and that the will of the said G. A. C. Halff does not contain any language providing that the charitable devisee is to be used in the State of Texas."

The case turns upon the correctness of the trial court's holding concerning the power of appointment. It has been decided that a bequest to a charitable organization authorized to operate generally throughout the United States and foreign countries is not exempt under the exceptions contained in Article 7122, when there is no provision in the will restricting the use of the bequest to, the State of Texas. Presbyterian Church in United States v. Sheppard, Tex. Civ.App., 198 S.W.2d 282. It is believed that the holding of the cited case is applicable to charitable corporations, associations and other types of charitable organizations, including that type of charitable trust wherein the ultimate beneficiaries are selected and designated by the trustees.

However, appellants urge here that although Hugh A. C. Halff was a trustee of sorts, he was not authorized to select the ultimate beneficiaries of the charitable bequest, but possessed only the power to designate an organization to perform that function; that this right of selection is a true power of appointment and consequently such right when exercised relates back to the effective date of the will, hence title passed from the testator to the charitable foundation as of the date of the death of the testator. The exception contained in Article 7122 provides that the schedule of taxes contained therein "shall not apply on property passing to or for the use of the

---

1. "Art. 7122. Class E—Foreign bequest

"If passing to or for the use of the United States, to or for the use of any other person or religious, educational or charitable organization or institution, or to any other person, corporation or association not included in any of the classes mentioned in the preceding portions of the original Act known as Chapter 29 of the General Laws of the Second Called Session of the Thirty-eighth Legislature, the tax shall be:

| 5% on any value in excess of | $ | 500 and not exceeding | $ | 10,000 |
|---|---|---|---|---|
| 6%  "   "   "   "   "   " | | 10,000  "   "   " | | 25,000 |
| 8%  "   "   "   "   "   " | | 25,000  "   "   " | | 50,000 |
| 10%  "   "   "   "   "   " | | 50,000  "   "   " | | 100,000 |
| 12%  "   "   "   "   "   " | | 100,000  "   "   " | | 500,000 |
| 15%  "   "   "   "   "   " | | 500,000  "   "   " | | 1,000,000 |
| 20%  "   "   "   "   "   " | 1,000,000 | | | |

"Provided, however, that this Article shall not apply on property passing to or for the use of the United States or any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State."

United States or any religious, educational or charitable organization when such bequest, devise or gift is to be used within this State." The Legislature has thus decided that the greater good may be served by exempting certain property from taxation, considering the use to which it is dedicated. A use of property which alleviates a burden which the State or its political subdivisions would otherwise necessarily bear at public expense, or a use thereof which fulfills or accomplishes the generally accepted charitable objectives of the people of the State, is recognized as a proper subject of tax exemption by specific legislative enactments. The question presented then is whether the particular devise meets the legislative requirements for tax exemption set forth in the proviso of the applicable statute.

The pertinent provisions of the amending codicil read as follows:

"Sixth: I do hereby amend Clause XI of my said Last Will and Testament to read as follows:

"XI. The remaining three-eighths (⅜) of said rest, residue and remainder of my estate I devise and bequeath to my brother, Mayer L. Halff, and my nephew, Hugh A. L. Halff, and the survivor, as Trustees, for the following public charitable uses and purposes: To distribute one-half (½) of the same to National Jewish Hospital at Denver. * * * The other one-half (½) of the same is to be distributed to such corporation, association or trust fund as my said Trustees may select for any one or more or all of the following charitable purposes for the relief of the poor, to-wit: Hospitalization; the promotion of health; the relief of the afflicted and other medical aid; the relief of poverty; the advancement of education; governmental or municipal purposes. In making over to the selected entity the one-half (½) of the said three-eighths (⅜) of my residuary estate, my Trustees shall make the gift to said selected entity with the stipulation that the said gift shall be held by said selected entity as a special trust fund to be designated the G. A. C. Halff Fund in Memory of Fannie L. Halff, the income thereof to be applied by said selected entity to its corporate purposes.

"The designation of the charitable entity, other than National Jewish Hospital at Denver, which is to receive one-half (½) of said three-eighths (⅜) of said rest, residue and remainder of my estate, shall be made by the Trustees or the survivor of them within two (2) years after my death, but the time for the delivery of the funds or property to it and to said National Jewish Hospital at Denver shall be subject to the provisions hereinafter contained, giving my Executors the power to manage my estate for a period not exceeding fifteen (15) years from the date of my death; the said delivery of funds or property need not be made all at the one time, but may in the discretion of my Executors and the Trustees of said fund or the survivors or survivor or successor be made by successive deliveries from time to time during said period of administration to National Jewish Hospital at Denver and to such other charitable entity designated as above provided for. My intention is that the payments be made either all at once or in installments during said period, as may be found convenient in the administration of my estate."

Mayer L. Halff died prior to the death of the testator, leaving Hugh A. L. Halff as the surviving executor and trustee, who caused a corporation to be formed under the name of G. A. C. Halff Foundation, in accordance with Article 1302, § 105, Vernon's Ann.Tex.Stats. The charter was duly filed in the office of the Secretary of State on December 11, 1951, and contains the following provision:

"The purpose for which this corporation is formed is exclusively for charitable, scientific, literary, or educational purposes under Subdivision 105 of Article 1302 of the Revised Civil Stat-

utes of Texas, to-wit: For the relief of the poor, for hospitalization, for the promotion of health, and the relief of poverty, for the advancement of education, and for governmental or municipal purposes, provided that no part of the net earnings shall inure to the benefit of any private stockholder or individual and no part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting, to influence legislation. All of the property of the corporation, both income and principal, shall be used within the State of Texas."

By written instrument, dated January 21, 1952, Hugh A. L. Halff as independent executor and trustee, designated the G. A. C. Halff Foundation as the corporation to receive one-half of three-eighths of the residue of the estate of G. A. C. Halff.

The Attorney General takes the position that the will created a charitable trust, and that the existence of such trust is incompatible with a power of appointment. As relating to this position, it is said in appellees' brief that, "since the will did not require the Trustee to designate a Texas charity, appellants' entire theory of exemption rests on the proposition that the provision of the will in question created a power of appointment rather than a charitable trust. Without the theory of 'relation back' a concomitant to a power of appointment, appellants would have no possible claim to exemption, since the property must then have passed at the testator's death to the trustee free of any requirement that it be used within this State." Our attention is then called to the definition of a charitable trust contained in the American Law Institute's Restatement of the Law of Trusts, as follows: "A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the

person by whom the property is held to equitable duties to deal with the property for a charitable purpose." 2 Restatement, Trusts, 1095, § 348.

■ Numerous and varied types of trust may come within the provisions of this definition. There may be trusts having indefinite beneficiaries, 2 Restatement, Trusts, 1136, § 364, and the concept of a power of appointment may be incompatible with a trust arrangement whereby the trustee must determine the ultimate recipients of the charity. People v. Kaiser, 306 Ill. 313, 137 N.E. 826. In other instances, however, such incompatibility may not exist. There is a distinction between a power of appointment with its vesting of title, and the administration of a charity with its detailed selection of recipients or beneficiaries. Under the testamentary provision involved here the designated trustee, Hugh A. L. Halff, had no use of the property. His authority was limited to the holding of the legal title, with the incidental authority to conserve the property and convert it into cash if deemed advisable, and to designate a single entity to take the property and put it to a charitable use. This latter authority was in our opinion a power of appointment, special in nature and mandatory in operation. A power of appointment is an "authority conferred by one person by deed or will upon another (called the donee) to appoint, that is to select and nominate the person or persons who are to receive and enjoy an estate or an income therefrom or from a fund, after the testator's death, or the donee's death, or after the termination of an existing right or interest." Black's Law Dictionary (3rd Ed.) p. 1392; Ballentine's College Law Dictionary, p. 645; 33 Tex.Jur. 757, Powers, § 2; 1 Simes, Future Interests, 429, § 243. The present power is special in that it could be exercised only in favor of members of a limited group, namely, institutions chartered for charitable purposes.[2] 1 Simes, Future Interests, 431,

---

2. "If the donor of a power of appointment, the person who creates it, restricts the persons to whom an appointment can be made and the group of permissible appointees does not include the person who is to exercise the power, the donee,

the power is commonly designated 'special.' If, on the other hand, the donor has so drawn the power that the donee can appoint to himself or to his estate, the power is 'general'." 5 American Law of Property 467, § 234.

§ 246. While the power was discretionary as to selection among a special group, it was also mandatory as to execution within a designated time. 1 Simes, Future Interests, 435, § 247.

■ In legal contemplation, therefore, *title passed* directly from the testator, G. A. C. Halff, to the appointee, G. A. C. Halff Foundation, as of the effective date of the will. It is said in 41 Am.Jur. 857, Powers, § 70, that:

"It is a well-founded principle that where a person takes by execution of a power, he takes, under the authority of the power, as if the power and the instrument executing the power had been incorporated in one instrument. The title rests on the act creating the power, and takes effect as if by the original deed. A use created under a power takes effect as if the use instead of the power had been inserted in the instrument containing the power. An appointee takes from the donor, the donee being treated as the agent of the donor. Property subject to a power of appointment is regarded as the property of the donor, and in exercising the power the donee is disposing of the donor's property. Thus, the appointee of a power possessed by a person who has no estate in the property takes title from the person in whom the title is vested. An appointee under a power, even though he is a child of the donee, does not take by descent from the donee, but by purchase from the donor of the power." [3]

The situation, insofar as inheritance tax liability is concerned, is the same as if the testator in his will had designated the G. A. C. Halff Foundation as the devisee of one-half of three-eighths of the residue of his estate. 1 Simes, Future Interests, 442, § 253. As the Foundation by its charter is restricted to Texas charities, the devise comes within the exception of Article 7122.

The operation of powers of appointment in connection with estate and succession taxes is well recognized. It is said in the Law Institute's Restatement of the Law of Property, that:

"Sec. 333, Construction of Succession and Estate Tax Statutes.

"Statutes imposing taxes upon the devolution of property upon death are construed as follows with reference to

3. Professor Richard R. Powell, the Reporter on Property for the American Law Institute, in his treatise upon the Law of Real Property, notes some tendency toward a departure from the doctrine of relation back, particularly with reference to general powers presently exercisable. However, it is said by Powell that,

"The history of powers of appointment has caused courts constantly to reiterate the idea that an appointee takes from the donor rather than from the donee. By the middle of the eighteenth century this idea has come to be sometimes expressed in terms of the doctrine of 're-lation back.' Thus the act of exercise was literally read back into the instrument creating the power as if the donee had been a pen filling in a blank of the original instrument. This approach finds expression in many aspects of the law on powers of appointment. * * * So persuasive has been this historical agency approach that it is safe advice to a present day lawyer that it can be ex-pected to apply to any problem arising today unless a statute has changed the law or the case falls into some category as to which the courts have made the major wrench of departing from history for the attainment of ends served by treating the donee as having ownership of the appointive assets." 3 Powell 297, § 387. Appointee taking from the donor.

In the American Law of Property, the doctrine of relation back as applied to general powers is criticized, but it is said that, "the 'relation back' notion is a fairly accurate description of much of the present law concerning 'special' powers of appointment, where the donee of the power, the person who exercises it, does not have the power to appoint him-self it is well enough to regard the ap-pointed property as passing from the donor to the appointee * * *." 5 American Law of Property 465, § 323. The Relation Back Doctrine.

See also, State Death Taxes and Powers of Appointment, by John F. Thompson, 26 Iowa Law Review 549.

184

property covered by a power of appointment unless the legislature manifests a contrary intent:

"(a) the transfer of such property is from the donor, not the donee, to the appointee or takers in default;

"(b) the donor is the 'deceased,' where the power is created by will;

"(c) the donee is not the 'deceased,' even though the power is exercised by will;

"(d) property covered by the power is not a part of the 'estate' of the donee or 'property which passes by will' of the donee, whether or not the power is general and whether or not the donee exercised it."

In Brown v. Commissioner of Internal Revenue, 50 F.2d 842, 846, the Third Circuit Court of Appeals, in speaking of the operation of a power of appointment, said:

"But where a power of appointment is discretionary, the power being exercised relates back to the period of time of the settlement of the power. That is, in this case, to the date of the testator's death. Therefore, when the power was once exercised, the church took the gift from the settlor, the creator of the power, and not from the trustees themselves, for the reason that the deed created no estate in any one except through the exercise of the power to appoint under the terms of the deed. The tribunal, authorized to appoint, having exercised the power, their act relates back to the settlor and the estate passed from him, as the creator of the power, and not from the trustees."

It is obvious that at the exact time of the death of a testator leaving a will containing a power of appointment, the amount of inheritance tax cannot be fixed with certainty. The power must first be exercised. In most cases there is some delay in ascertaining the amount of the tax due, although the liability must be determined as of the date of the death of the testator. We are not here concerned with an unrea-

sonable delay. The testator set a two-year limit and the donee has made his appointment well within that time.

The fact that Hugh A. L. Halff occupied the position of executor and trustee under the will for the purpose of caring for the property until the appointment could be made, did not preclude him from also being a donee under a power of appointment. "A power may coexist with a trust, where they are not inconsistent." 72 C.J.S., Powers, § 1, p. 402, and a donee of a power of appointment may have power to sell the property and thus exercise the power of appointment by dividing the proceeds. 72 C.J.S., Powers, § 24(e), p. 420. A trust and a power may be two separate and distinct responsibilities and in the absence of incompatibility may be borne by the same person. There are numerous examples among the decided cases in which fiduciaries, such as executors and trustees, have exercised powers of appointment. Beck's Appeal, 116 Pa. 547, 9 A. 942; In re Stewart's Estate, 131 N.Y. 274, 30 N.E. 184, 14 L.R.A. 836; Cochran v. McLaughlin, 128 Conn. 638, 24 A.2d 836; Brown v. Commissioner of Internal Revenue, 3 Cir., 50 F.2d 842.

Under the doctrine of "relation back," the circumstance that the G. A. C. Halff Foundation was not chartered until after the death of the testator does not affect the exemption. 28 Am.Jur. 107, Inheritance, Estate and Gift Taxes, § 206.

We agree with appellants' conclusions that there was no taxable succession of property to Hugh A. L. Halff; that the will of G. A. C. Halff, deceased, vested in said Hugh A. L. Halff a special power of appointment to an entity which was required to make charitable use of the property in accordance with its corporate purpose; that under the doctrine of "relation back" the selection of the Texas charity, under the mandatory power expressed in the will, constituted selection by the testator as if the Foundation had been named in the will, so that at the time of taxable succession the bequest to the Foundation was exempt under Article 7122.

The judgment of the trial court is accordingly reversed and judgment here rendered declaring that the bequest passing to the G. A. C. Halff Foundation is exempt from State inheritance taxes under Article 7122, Vernon's Ann.Tex.Stats.

Reversed and rendered.